Argued and submitted July 29, reversed and remanded November 24, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ANTHONY JAMES FISH,
*Defendant-Appellant.*

Josephine County Circuit Court
07CR0486; A139664

243 P3d 873

David O. Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Denis M. Vannier, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Inge D. Wells, Senior Assistant Attorney General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant, who was convicted of second-degree assault, ORS 163.175, two counts of fourth-degree assault, ORS 163.160, and menacing, ORS 163.190, argues on appeal that the trial court erred in admitting evidence of a statement that he made about one of the victims during trial. He further asserts that the trial court committed plain error in instructing the jury that it could return a nonunanimous jury verdict. We reject the latter argument without discussion. *See State v. Bowen*, 215 Or App 199, 168 P3d 1208 (2007), *adh'd to as modified on recons*, 220 Or App 380, 185 P3d 1129, *rev den*, 345 Or 415 (2008), *cert den*, ___ US ___ , 130 S Ct 52 (2009). With respect to defendant's first argument, we conclude that the trial court erred in admitting the challenged evidence and further conclude that, despite the state's assertions to the contrary, the erroneous admission of the evidence was not harmless. Accordingly, we reverse and remand.

Because the issue on appeal pertains to the second-degree assault conviction, we recite the facts concerning that offense. And, because defendant was convicted after a jury trial, we state those facts in the light most favorable to the state. *State v. Johnson*, 342 Or 596, 598, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008).

The pertinent events occurred during the early hours of July 14, 2007, outside a tavern that had just closed for the night. Defendant had been in the tavern, accompanied by friends and his parents, celebrating his birthday. They left the tavern near closing time, and one of defendant's female friends and defendant's mother began brawling with several women who also had just left the tavern. The brawl soon attracted a fairly large number of combatants on both sides. Several doormen from the tavern attempted to break up the fight, with limited success.

Before that evening, defendant and the victim, Cummings, had had no contact with each other. Cummings testified that he had observed defendant when they were both outside the tavern and defendant was standing on top of a taxicab, yelling and waving his arms. A crowd of 15 to 20 people were in front of the cab, including defendant's family and friends who were involved in the brawl. Defendant

jumped from the cab into the crowd, and people in the crowd began hitting and pushing defendant. Defendant and the crowd moved closer to the victim, who attempted to push defendant away. Defendant then swung at the victim with a box-cutter, cutting his chin, neck, and chest. The victim then advanced on defendant, who was trying to retreat, and, with the assistance of others, the victim hit and kicked defendant. Defendant fled and was apprehended nearby by police officers who had been called to the scene of the brawl.

Although we view the evidence in the light most favorable to the state, we note that there is conflicting evidence in the record concerning (1) the extent to which defendant and the victim had engaged in physical combat with each other before defendant cut the victim and (2) the identity, as between defendant and the victim, of the initial aggressor. Defendant did not deny that he inflicted the wounds that Cummings suffered that evening, but defendant's theory was that Cummings was the initial aggressor, and defendant acted in self-defense.

After the state's case-in-chief, during which Cummings testified, defendant testified in his own defense. On cross-examination, the prosecutor elicited from defendant testimony about a telephone conversation that defendant had had with his mother the previous night in which they discussed the events of the trial and, during which, defendant told his mother that he was going to "catch [Cummings] on fire when I get out."[1] Defense counsel objected to that testimony on the ground that the evidence was irrelevant and unfairly prejudicial. The prosecutor responded that the evidence showed that defendant was biased against the victim and, therefore, the evidence was admissible without regard to its prejudicial effect. In response to the court's observation that the very nature of the case indicated "a bias between" the victim and defendant, the prosecutor posited that the evidence "show[ed] the degree of animosity, the degree of violence. It also shows potentially his state of mind at the time that it actually happened." The prosecutor added that "[i]t certainly shows his bias as to why he's testifying today in the

---

[1] That conversation had been recorded at the jail.

fashion that he's testifying." The court noted the minimal relevance of evidence that defendant was angry with a witness who had testified against him, but concluded that the evidence nevertheless was admissible on the ground that "bias of a witness is never a collateral matter and matters that would otherwise be irrelevant are allowed to impeach a witness for bias." Laird C. Kirkpatrick, *Oregon Evidence* § 609-1.03, 519 (5th ed 2007) (citing *United States v. Robinson*, 530 F2d 1076, 1079 (DC Cir 1976)). The court then stated, "I don't see a balancing test. If [I] did see a balancing test and I—and if I applied the balancing test then I think the prejudicial—the prejudicial effect is greater than the probative value." The court admitted the challenged evidence, and defendant ultimately was convicted.

On appeal, defendant asserts that the trial court erred in failing to exclude the challenged evidence under OEC 403. He asserts that, even if the evidence arguably was relevant for purposes of bias or impeachment, there is no requirement that such evidence must be admitted without regard to the strictures of OEC 403.

The state responds, first, that the evidence was properly admitted as impeachment or bias evidence under OEC 609-1; second, that, as an alternative basis for affirmance, it was admissible under OEC 404(3) as evidence of "other crimes, wrongs, or acts" and that, under OEC 404(4), such evidence is not subject to the balancing of unfair prejudice against probative value; and third, that, even if the evidence was erroneously admitted, its admission was harmless.

We first consider whether the evidence was properly admitted under OEC 609-1. That rule provides, in part, that "[t]he credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest." Defendant maintains that OEC 403 applies to the assessment of evidence sought to be admitted under OEC 609-1. The state agrees that that is generally the case, but points to *State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984), where the Supreme Court announced that "[i]t is *always* permissible to show the interest or bias of an adverse witness." (Emphasis added.) From *Hubbard*, the

state reasons, it is "always" permissible to show bias; if the only evidence of bias offered is more prejudicial than probative, it must be admitted regardless of its prejudicial nature, because, as the court noted, "the cross-examiner must be given the opportunity to establish sufficient facts from which the bias or interest may be inferred[.]" *Id.* at 800; *see also State v. Muldrew*, 229 Or App 219, 227, 210 P3d 936 (2009) (court has discretion to limit evidence of bias only after an initial showing of bias has been made); *State v. Tyon*, 226 Or App 428, 441-42, 204 P3d 106 (2009) (same); *State v. Shelly*, 212 Or App 65, 69-70, 157 P3d 234 (2007) (same). The state asserts that the challenged evidence was the only evidence that showed that defendant was "biased" against Cummings and, therefore, the trial court properly admitted that evidence despite concluding that its probative value was minimal and its prejudicial effect was great. As explained below, the state misapprehends *Hubbard* and our case law following it and the rationale of OEC 609-1.

In *Hubbard*, the defendant had been charged with attempting to elude a police officer and escape. The defendant sought to introduce evidence concerning the arresting officer's knowledge of potential sanctions against officers who used excessive force in performing arrests. 297 Or at 791.[2] Because the defendant and the officer were the only witnesses, "the credibility of the officer was a critical prosecutorial element of the trial." *Id.* The defendant's theory of the case was that the officer's "version of the events might be slanted because of his desire to avoid departmental discipline" for use of excessive force. *Id.* at 792. The trial court excluded the evidence as unfairly prejudicial, based on the undue risk that it would create the impression that a complaint concerning excessive force had been made against the officer. *Id.*

---

[2] *Hubbard* was decided after the adoption of the Oregon Evidence Code but concerned a trial that occurred before the code was adopted. The court, however, analyzed the question by reference to the evidence code, *see Hubbard*, 297 Or at 796-98, and indeed, the legislative commentary to the Oregon Evidence Code makes it clear that the legislature intended to codify the court's prior case law concerning evidence of bias. Legislative Commentary to OEC 609-1, *reprinted in* Kirkpatrick, *Oregon Evidence* § 609-1.02 at 515-19.

The Supreme Court held that it was error to exclude the evidence. The court noted that the trial court apparently believed that it had "discretion to limit the extent of cross-examination for bias or interest." *Id.* at 794 (citing *Schrock v. Goodell*, 270 Or 504, 510, 528 P2d 1048 (1974)) (footnote omitted); *see also McCarty v. Hedges*, 212 Or 497, 309 P2d 186, 321 P2d 285 (1958). The Supreme Court observed that that proposition is not absolute. In particular, the court stated that "[a] principle of evidence law in Oregon is that: 'It is always permissible to show the interest or bias of an adverse witness.' *Clevenger v. Schallhorn*, [205 Or 209, 215, 286 P2d 651 (1955)]." The court declared, however, that, under both OEC 403 and its prior case law, some evidence of bias can be properly excluded. *Hubbard*, 297 Or at 797-98. The court explained:

> "The statement in *Clevenger* that the bias or interest of a witness may always be shown is not in conflict with the statement in *McCarty* that the trial judge has discretion to limit the extent of inquiry into bias or interest. *The discretion of the trial judge to exclude evidence relevant to bias or interest only obtains once sufficient facts have been established from which the jury may infer that bias or interest.* Typically, this would require wide latitude be given to the cross-examiner to ask and receive answers to questions sufficient to demonstrate to the jury the nature of the bias or interest of the witness. But *in some situations, this 'initial showing' of bias or interest occurs during direct examination or the bias or interest is apparent from the circumstances of the trial. In such situations, it would be within the discretion of the trial judge to exclude any questions on cross-examination.*"

*Id.* at 798 (emphasis added).

In this case, the state insists that the challenged evidence *was* its "initial showing" of bias and therefore could not have been excluded irrespective of its prejudicial effect. We disagree. At most, the proffered evidence demonstrated a bias that already was "apparent from the circumstances of the trial." We emphasize, as did the court in *Hubbard*, 297 Or at 791-92, that the evaluation of bias evidence depends on the parties' theories of the case. Here, the state was *not* trying to demonstrate that defendant had a bias against the victim

that preexisted the brawl outside the tavern and that, perforce, undermined his self-defense theory by showing, for example, a motive for a premeditated assault. Nor would the evidence have supported any such theory. As noted, the evidence showed that defendant and Cummings were strangers to each other before the evening of the brawl, that the brawl began when others started fighting, and that, regardless of whose version of events was believed, defendant and Cummings were drawn into the brawl as it expanded.

By contrast, in the cases cited in *Hubbard* and those mentioned in the legislative commentary to OEC 609-1, the classic "impeachment for bias" evidence demonstrates that a witness has a previously undisclosed interest in the outcome of the litigation. *See, e.g.*, *McCarty*, 212 Or at 515-17 (injured witness had pending action against same defendants concerning same accident); *O'Harra v. Pundt*, 210 Or 533, 543, 310 P2d 1110 (1957) (defendant had pending libel action against newspaper concerning same underlying facts); *Clevenger*, 205 Or at 209 (witness had personal injury action pending against same defendant). Here, on the other hand, defendant's interest in the outcome of the proceeding was manifest; the fact that defendant and Cummings were in adversarial positions was amply demonstrated not only by their roles in the litigation as defendant and victim, but also by the underlying facts of the case, which involved them engaging in physical combat with each other.

In short, the disputed evidence in this case did not constitute an "initial showing" of a bias, the existence of which might otherwise have eluded the jury's attention. It follows that, under *Hubbard* and its progeny, the trial court had discretion to weigh the evidence under OEC 403.[3] As

---

[3] Our conclusion is consistent with the Supreme Court's recent decision in *State v. Haugen*, 349 Or 174, 243 P3d 31 (2010), where, on direct appeal of an aggravated murder conviction and a death penalty sentence, the court upheld the trial court's exclusion of bias evidence in the face of the defendant's assertion that it is always permissible to adduce evidence of a witness's bias. The court said:

"However, our cases also make clear that, while evidence of bias is relevant and may be admitted, it is not necessarily error to exclude such evidence:

" 'Evidence relevant to the bias or interest of a witness need not always be admitted. * * * Where bias or interest is shown, but further questioning is objected to, the decision is within the discretion of the trial judge.'

noted, the court stated that, if it were to apply OEC 403, it would exclude the evidence. Thus, we turn to the state's alternative argument that, even if the evidence was subject to balancing under OEC 403, it was properly admitted.

■■ A determination by a trial court under OEC 403 is reviewed for abuse of discretion. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999) (citing *Hubbard*, 297 Or at 794 n 2, 798). The question specifically posed by OEC 403 is whether the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." In this case, there are no arguments concerning confusion, misleading the jury, undue delay, or cumulative evidence. Thus, the question is the most basic one under OEC 403: Is the probative value of the evidence substantially outweighed by the danger of unfair prejudice? That inquiry requires an initial assessment of the probative value of the evidence. Defendant does not argue on appeal that the probative value of the evidence is so minimal that it did not satisfy the low threshold for relevance under OEC 401. Accordingly, we begin with the premise that the evidence has some relevance to the purpose for which it was admitted, that is, to show defendant's bias against the victim because defendant was angry with the victim during trial in light of the victim's testimony at trial. When the jury heard the evidence, it already had been presented with both parties' theories of the case, as well as evidence supporting each party's version of the fight between defendant and Cummings. Given that circumstance, we agree with the trial court's assessment that evidence that defendant was upset

---

"*Hubbard*, 297 Or at 799-800. As the 1981 Conference Committee Commentary on OEC 609-1 states, although the rule permits the credibility of a witness to be attacked by evidence of conduct or statements showing bias or interest, '[t]he trial judge retains discretion to control the extent to which proof of bias or interest may go. As with other evidence, where the evidence of conduct or statements showing bias is merely cumulative of other evidence of bias, the trial court has discretion to exclude it. *See State v. Cox*, 337 Or 477, 487, 98 P3d 1103 (2004), *cert den*, 546 US 830 (2005) (trial court did not err in excluding evidence of victim's violent acts towards others to show defendant's reasons for fearing victim, because evidence, although relevant, 'would not have added greatly to the evidence already before the jury')."

*Haugen*, 349 Or at 193 (brackets in original).

with the victim because of his testimony added very little probative weight to the state's case.

The prejudicial effect of the evidence, on the other hand, was significant. Although, as discussed more fully below, defendant attempted to explain his comment about catching the victim on fire as a mere figure of speech, not to be taken literally, the evidence likely would be understood by a jury to show that a person who had inflicted violent injury on another person in the past planned to inflict another violent injury on that same person again in the future when he was released from custody. Thus, the jury might well have used the challenged evidence to reason that, regardless of what transpired in the tavern parking lot on July 14, the victim needed to be protected from the threat of future violence from defendant. Such a use of that evidence, would, of course, be improper. As the legislative commentary to OEC 403 states, " 'Unfair prejudice,' in the context of [OEC] 403, means an undue tendency to suggest decisions on an improper basis, commonly although not always an emotional one." Legislative Commentary to OEC 403, *reprinted in* Kirkpatrick, *Oregon Evidence* § 403.02 at 173-75.

In sum, we agree with the trial court that the challenged evidence had little probative value to show defendant's bias, but there was a substantial risk that it would be misused by the jury. It follows that the trial court correctly concluded that, under OEC 403, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

The state argues, alternatively, that the evidence could properly have been admitted under OEC 404(3) and that OEC 404(4) would have precluded the balancing of its probative value against its prejudicial effect if it had been admitted under that rule. Although, as noted, the prosecutor made a passing reference that could be interpreted as a proffer under OEC 404(3) when she stated that the evidence "also shows potentially his state of mind at the time that it actually happened,"[4] the trial court did not admit the evidence on that

---

[4] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity

basis. Instead, the court admitted it for the other purpose that the prosecutor advanced—as evidence of bias. The point is important, because one of our considerations in determining whether it is appropriate to affirm on alternative grounds is whether a party "might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue[.]" *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001) (emphasis in original). When evidence is admitted under OEC 404(3), the opposing party is entitled to an instruction limiting the jury's consideration of the evidence to the noncharacter purpose for which it was admitted. *State v. Berg*, 223 Or App 387, 402, 196 P3d 547 (2008). Thus, even *if* the evidence was relevant to a noncharacter purpose under OEC 404(3)—an issue that we need not decide here— the record could have developed differently because defense counsel could have obtained an instruction limiting the jury's use of the evidence. Accordingly, we reject the state's proffered alternative basis for affirmance.

We turn, finally, to the state's argument that the admission of the disputed evidence was harmless. Evidentiary error is not presumed to be prejudicial. OEC 103(1). The state makes several arguments as to why the admission of this evidence was unlikely to have affected the verdict. First, it asserts that the evidence of defendant's guilt was "substantial and compelling." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Certainly the state is correct that the evidence that defendant inflicted wounds during the brawl was compelling. But, again, defendant did not deny inflicting Cummings's wounds; rather, he claimed self-defense. Although there was compelling evidence that defendant inflicted the injury, the state bore the burden of disproving that defendant acted in self-defense. As discussed, there was conflicting evidence about the identity of the initial aggressor.

The state further argues that the evidence was unlikely to have affected the verdict because the state successfully impeached defendant's credibility with evidence of

---

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

his prior criminal convictions. We note, however, that the record reveals that Cummings, as well, was impeached by evidence of prior convictions. The key issue before the jury was whether it believed defendant's version of events or Cummings's version of events.

Finally, the state characterizes the challenged evidence as "relatively innocuous," noting that defendant explained to the jury that it was merely a figure of speech to express his anger at Cummings and that he did not intend to actually light Cummings on fire. The logic of the state's position is self-contradicting. It asserts on the one hand that the error was harmless because the jury *would not have believed* defendant's self-defense testimony on the ground that he lacked credibility. On the other hand, the state contends that the jury would not have misused the evidence because it *would have believed* defendant when he said that he did not intend to inflict further harm on the victim. As explained, there was a risk that the jury interpreted defendant's statement as an indirect threat to harm the victim in the future. That the jury *might* have believed defendant's disclaimers does not render admission of the evidence harmless.

■ In assessing whether an error is harmless, we do not reweigh the evidence, but assess the likely effect that the error had on the jury's verdict. *Davis*, 336 Or at 32. Here, as noted above, the evidence was inflammatory, had little probative value, and easily could have been misused by the jury as described above. In that circumstance, we are unable to say that there is little likelihood that the error affected the verdict.

Reversed and remanded.