Argued and submitted December 20, 2010, affirmed August 17, 2011, petition for review denied February 2, 2012 (351 Or 546)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## STEPHEN MICHAEL PHILLIPS,
*Defendant-Appellant.*

Washington County Circuit Court
D090271M; A141812

261 P3d 55

Jedediah Peterson, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Justice Joy Rillera, Assistant Attorney General, argued the cause for respondent. With her on the brief was John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Before Brewer, Chief Judge, and Gillette, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals his convictions for assault in the fourth degree and driving under the influence of intoxicants (DUII). Defendant assigns error to the trial court's denial of his motion *in limine* to admit evidence of an altercation that he had with a police officer inside the Intoxilyzer room of the Hillsboro police station. That evidence was admissible, defendant argued, to impeach another officer—who had been present in the room but had not participated in the altercation—for bias against defendant. We review for errors of law, and affirm. *State v. Hubbard*, 297 Or 789, 800, 688 P2d 1311 (1984).

Officer Cook arrested defendant for DUII and took him to the Hillsboro Police Station. Cook instructed defendant to sit in a chair in the Intoxilyzer room of the station. That room is used both for conducting Intoxilyzer breath tests of DUII suspects and for observing suspects for signs of intoxication. Defendant refused to take a breath test, so Cook remained in the room to observe defendant for signs of intoxication. A video camera was activated and focused on a portion of the room, including the chair on which defendant was seated and the desk where Cook sat while observing defendant. The video camera did not record sound. The video showed that, as Cook was observing defendant, a second officer, Kaufman, entered the room. Kaufman had been present when Cook arrested defendant for DUII. While Cook was making a telephone call in the corner of the room, defendant stood up from the chair and began motioning toward Cook. Kaufman pushed defendant back down, leading to an altercation between Kaufman and defendant that left defendant with injuries.[1]

Defendant filed a motion *in limine* to admit the video recording of the altercation along with photographs of defendant's injuries. At the hearing on that motion, the prosecutor informed defense counsel and the court that she did not intend to call Kaufman as a witness, because Cook had been

---

[1] Defendant was charged with resisting arrest on the basis of the altercation. That charge was dismissed before trial and is not at issue here.

the arresting officer on the DUII and had made the observations of defendant's level of intoxication upon which the state intended to rely to prove that defendant had driven under the influence. The prosecutor described the contents of the recording:

> "[Y]ou can see from the video, you can see [defendant] stand up, point somewhere. You can see [Kaufman] push him back into his chair, and then it's [Kaufman's]—what he indicated to myself—Officer Kaufman indicated that when he pushed him back into the chair, that at that time the defendant grabbed onto him and pulled him into him, at which time he [Kaufman] attempted to deliver a focused blow, and ended up falling on top of him."

Defense counsel did not challenge the prosecutor's description of the contents of the video recording, but urged the court to view the recording itself. The court declined to do so.[2]

Defense counsel argued that the video recording was relevant to show bias on the part of Cook, and was admissible under OEC 609-1:

> "First of all, I believe that it's relevant because the assault took place in the DUII Intoxilyzer room while the police officer was still making observations as to my client's level of intoxication. So, in essence, he was still investigating the DUII while the assault took place.
>
> "Further, the video shows an extreme bias on the part of the police officer, which is relevant to his writing of the report in this case, and also shows that there could be fabrication in his recitation of what happened, and perhaps his attempt to protect himself or the other officers who were involved in this."

The prosecutor then argued:

> "I would argue that these photographs and the video are not relevant. They are certainly not relevant with regard to the assault four. They're also not relevant to the DWII. They're—in no way do they—does anything surrounding the resisting arrest have anything to do with whether or not the defendant was intoxicated. There's no evidence that

---

[2] We allowed defendant's motion to supplement the record on appeal with the video recording. We have viewed that video and find it to be consistent with the description given by the prosecutor.

helps or hurts the defense surrounding the issue of intoxication, and specifically surrounding the issue of whether or not the defendant drove while under the influence of alcohol.

"The officer who conducted the DUII stop, Officer Cook, was not the officer who was involved in the resisting arrest.

"* * * * *

"But what the video clearly shows, and what Officer Cook's report states is that Officer Cook was talking on the telephone when the resisting arrest incident took place. He walked away from it. He didn't see what immediately happened. His only involvement was after the incident had happened, he went to retrieve help.

"And I—I think clearly that the only thing that showing this video and these photographs would be useful for would be to inflame the jury. It's clearly overly prejudicial, and that prejudicial highly outweighs any probative value of which I honestly don't believe there's any to begin with."

Defense counsel responded:

"Officer Cook's actions as the assault is taking place, and after the assault has taken place, and also what he wrote in his police report as to the assault definitely goes to their bias, and shows that the Hillsboro Police Department was out to—not to be fair to my client, was out to get him."

The trial court denied defendant's motion *in limine*:

"I'm going to side with the state. * * * I think the bias in this case, whatever it might be, and I'm not even sure I under—it's a legitimate bias under the evidence rules, but its effect—the effect on the jury would—is—I think the state's put it correct. It would be inflammatory, and divert their attention from what the legitimate relevant facts are, or charges are, to an incident that occurred after there was an arrest, and—and the decision had been made by the officers, whoever they were, that [defendant] was under the influence.

"You have the right to call whatever witness you want as long as the testimony's relevant. The testimony of Kaufman, as to his observations in the field, I think are certainly relevant. Those observations may differ from Cook's,

but I think beyond that, then it's—it's—I'm not going to allow it to come in. The tape or the photographs."

Defendant was convicted by a jury; this appeal followed.

Defendant renews his argument on appeal.[3] Defendant contends that the trial court erred in denying his motion *in limine* because

"[d]efendant could have impeached [Cook's] testimony by arguing that the events captured on video contradict what was written in the police reports. The incident was relevant to the charges at issue, because it occurred in the Intoxilyzer room, while the officers were still investigating the allegations of driving under the influence. Defendant could have argued that Officer Cook had an interest in protecting his partner, and his testimony 'would have been colored by his desire to ensure defendant's conviction in this case.' "

(Citation omitted.) In defendant's view, the video was admissible under OEC 609-1 to show Cook's bias. The state replies that the video did not tend to show any bias on Cook's part, because Cook did not participate in the altercation and, indeed, had been on the phone in another part of the Intoxilyzer room when it took place. Because the trial court's ruling precluded defendant from meeting the initial evidentiary threshold for the introduction of bias evidence, we review for errors of law. *Hubbard*, 297 Or at 800.

OEC 609-1 provides:

"The credibility of a witness may be attacked by evidence *that the witness* engaged in conduct or made statements showing bias or interest. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the statement shall be shown or disclosed to the opposing party."

---

[3] We emphasize that defendant's sole argument is that this evidence should have been admitted under OEC 609-1 as evidence of conduct demonstrating the bias of the witness. He did not argue, and we do not consider, whether it might have come in based on any other theory of admissibility. *See, e.g., State v. Brown*, 299 Or 143, 149-50, 699 P2d 1122 (1985) (limitations of OEC 609-1 apply to bias evidence that the witness "engaged in conduct or made statements," but not to other types of bias evidence).

(Emphasis added.) Initially, the text of the rule requires that the proffered impeachment evidence must show that the *witness* engaged in conduct or made statements showing bias or interest. In addressing that requirement, both defendant and the state rely on the Supreme Court's decision in *Hubbard*.[4] In *Hubbard*, the defendant had been charged with attempting to elude a police officer and escape. The defendant sought to introduce evidence concerning the arresting officer's knowledge of potential sanctions against officers who used excessive force in performing arrests. 297 Or at 791.[5] Because the defendant and the officer were the only witnesses, "the credibility of the officer was a critical prosecutorial element of the trial." *Id.* The defendant's theory of the case was that the officer's "version of the events might be slanted because of his desire to avoid departmental discipline" for use of excessive force. *Id.* at 792. The trial court excluded the evidence as unfairly prejudicial, based on the undue risk that it would create the impression that a complaint concerning excessive force had been made against the officer. *Id.*

The Supreme Court held that it was error to exclude the proffered evidence. The court noted that the trial court apparently believed that it had "discretion to limit the extent of cross-examination for bias or interest." *Id.* at 794. The Supreme Court observed that that proposition is not absolute. In particular, the court stated that "[a] principle of evidence law in Oregon is that: 'It is always permissible to show the interest or bias of an adverse witness.' *Clevenger v. Schallhorn*, [205 Or 209, 215, 286 P2d 651 (1955)]." The court declared, however, that, under both OEC 403 and its prior

---

[4] The Supreme Court recently elaborated on a different facet of *Hubbard* in *State v. Haugen*, 349 Or 174, 193-96, 243 P3d 31 (2010). *Haugen* dealt with a trial court's discretion to limit the presentation of bias evidence once an initial showing of bias has been made. Because the trial court's ruling in this case precluded defendant from meeting the initial evidentiary threshold, the court's analysis in *Haugen* is inapplicable.

[5] *Hubbard* was decided after the adoption of the Oregon Evidence Code but concerned a trial that occurred before the code was adopted. The court, however, analyzed the question by reference to the evidence code, *see Hubbard*, 297 Or at 796-98, and indeed, the legislative commentary to the Oregon Evidence Code makes it clear that the legislature intended to codify the court's prior case law concerning evidence of bias. Legislative Commentary to OEC 609-1, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 609-1.02 at 515-19 (5th ed 2007).

case law, some evidence of bias can be properly excluded. *Hubbard*, 297 Or at 797-98. The court explained:

> "The statement in *Clevenger* that the bias or interest of a witness may always be shown is not in conflict with the statement in *McCarty* [*v. Hedges*, 212 Or 497, 309 P2d 186 (1957)], that the trial judge has discretion to limit the extent of inquiry into bias or interest. The discretion of the trial judge to exclude evidence relevant to bias or interest only obtains once sufficient facts have been established from which the jury may infer that bias or interest. Typically, this would require wide latitude be given to the cross-examiner to ask and receive answers to questions sufficient to demonstrate to the jury the nature of the bias or interest of the witness. But in some situations, this 'initial showing' of bias or interest occurs during direct examination or the bias or interest is apparent from the circumstances of the trial. In such situations, it would be within the discretion of the trial judge to exclude any questions on cross-examination."

*Id.* at 798.

Defendant seizes upon the quoted portion of *Hubbard* for his argument that the trial court denied him an opportunity to make an "initial showing" of bias on the part of Cook. The state replies that, because the video here was not relevant to show bias on the part of Cook, the trial court properly excluded it. The court in *Hubbard* held that, "[t]o be relevant, evidence introduced to impeach a witness for bias or interest need only have a mere tendency to show the bias or interest of the witness," and further explained that, in a prior case, where the evidence had not been relevant to show bias or interest, "it was properly excluded." *Id.* at 796 (citing *Schrock v. Goodell*, 270 Or 504, 510, 528 P2d 1048 (1974)). Accordingly, the threshold question in this case is whether the video had even "a mere tendency" to show bias on the part of Cook.

What distinguishes this case from *Hubbard*, and, indeed, from all of the cases upon which defendant relies, is that here, defendant sought to impeach one witness—Cook—with evidence of the actions of another person, Kaufman, who was not called as a witness. *Cf. State v. Muldrew*, 229 Or App

219, 210 P3d 936 (2009) (evidence that officer had recommended prosecution of the defendant that would have potentially immunized officer from discipline admissible to show bias); *State v. Tyon*, 226 Or App 428, 204 P3d 106 (2009) (evidence that officer had previously assisted in arresting the defendant for DUII and knew that the defendant had not been convicted for that prior conduct admissible to show bias where officer subsequently arrested the defendant for DUII); *State v. Shelly*, 212 Or App 65, 157 P3d 234 (2007) (evidence that witness was on probation and thus had reason to curry favor with the state was admissible to show bias of the witness).

Unlike *Hubbard, Muldrew, Tyon,* and *Shelly,* all of which involved attempts to impeach a witness for bias with evidence of the witness's own actions or status, here defense counsel conceded that "[Cook] was not specifically involved in the physical altercation that took place." Defendant attempts to obviate that distinction by arguing that the video would have tended to show that Cook had a motive to lie in order to protect his fellow officer, Kaufman. However, defendant offered no evidence to establish any motive on the part of Cook to lie to protect Kaufman beyond the mere fact that both were police officers. Indeed, defendant's theory of bias was broader still. Defense counsel argued to the trial court that Cook's actions as shown on the video "shows that the Hillsboro Police Department was out to—not to be fair to my client, was out to get him." As we recognized in *State v. Harberts*, 198 Or App 546, 561, 108 P3d 1201 (2005), *rev den*, 341 Or 80 (2006), when evaluating the relevance of evidence proffered to show the bias of a witness, reasonable inferences are permissible but "speculation * * * is not." Here, the string of inferences defendant would have us unwind is simply too long. The trial court did not err in denying defendant's motion *in limine*.

Affirmed.