Submitted June 28, reversed and remanded December 14, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

VANCE EDWARD PRANGE,
*Defendant-Appellant.*

Lincoln County Circuit Court
092114; A143534

268 P3d 749

Peter Gartlan, Chief Defender, and Erica Herb, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Pamela J. Walsh, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

.

### NAKAMOTO, J.

Defendant appeals from a judgment of conviction of menacing, ORS 163.190, and disorderly conduct, ORS 166.025. At trial, defendant sought to challenge the victim's credibility by offering evidence of hostilities between the victim and victim's wife and the defendant's stepdaughter, which, defendant contended, motivated the victim to make false accusations against him. The trial court excluded that evidence as impermissible prior bad acts evidence under OEC 404(3) and as irrelevant. On appeal, defendant contends that evidence that the victim's wife had called defendant's stepdaughter a name and then falsely reported to the police that his stepdaughter had pulled out a pellet gun during that encounter was relevant to the victim's credibility as a witness and that there was no valid reason to exclude the evidence. We agree, and we reverse and remand.

We take the following facts from the record. The victim and his wife; defendant and his partner; and defendant's adult stepdaughter (his partner's daughter), all had homes in the same neighborhood. Defendant had a house 11 driveways down from his stepdaughter's house, and the victim and his wife's house was diagonally across the street from the stepdaughter's house. The victim testified that, one evening, from the stepdaughter's property, defendant threw rocks and shot a pellet gun at the victim's house and called the victim and his wife names. The victim called 9-1-1. The police officer who responded to that call testified that, because of safety concerns, he could look only briefly for pellets outside the victim's house, which he did not find. He did not see a gun when he went to arrest defendant on the stepdaughter's property, and, because he perceived that it was unsafe, he did not search for one. Although the officer did not actually see defendant throw rocks, he saw rocks landing near the victim's house and saw defendant with his arm in a throwing position. According to the police officer's testimony, defendant's partner was intoxicated, agitated, and "highly confrontational" while the officer was attempting to speak with defendant, and defendant also appeared intoxicated. The officer did not see anyone other than defendant, his partner, and the victim.

The victim and the officer were the only witnesses for the prosecution. Defendant did not cross-examine either witness about any bias felt by the victim against defendant. Instead, defendant sought to offer his stepdaughter's testimony to show that the victim was biased. Defendant told the court that the evidence was relevant "to impeach a witness," that defendant's theory was that the "accusations were in part exaggerated or fabricated," and that he would use the evidence to show "that this story has been put out there with the intention of causing trouble for [defendant]." The trial court instructed defendant to make an offer of proof and to identify an exception to OEC 404, concerning prior bad acts, that would allow the evidence to be admitted.

In an offer of proof made after the prosecution rested, the stepdaughter testified about a prior dispute between the victim's wife and the stepdaughter:

> "I was outside, and [the victim's wife] started calling me the C word. I can't remember why because this was a while back. And then all of a sudden there was an accusation about me pulling out a firearm, a pellet gun. And I said that I don't have one because I don't believe in having firearms. They're dangerous."

Defendant's stepdaughter further testified that, when police responded, she offered to allow them to search her house for a pellet gun, but they declined to do so. Although the stepdaughter did not say when the incident occurred, she did testify that she had lived across the street from the victim for one and one-half years.

Defendant's stepdaughter also testified that, during that period, she had had numerous problems with the victim:

> "There's been a lot of name calling, bad language, threatening. He has threatened to stab me with a screwdriver. He has accosted my roommates when I first moved in to where they were scared and had to call a sheriff; just off-the-wall stuff that whenever I'd drive up my driveway at night, because I work really odd hours, that I'd always get accosted."

The stepdaughter testified she had called the police a few times because of the victim's conduct.[1]

---

[1] On appeal, defendant does not assign error to the exclusion of his stepdaughter's testimony about the victim's past conduct toward her; he challenges only the

The prosecution objected to the stepdaughter's testimony on the basis of OEC 404, and defendant responded that the testimony was admissible under OEC 404(3) to show the victim's motive for accusing defendant. Defendant argued that the testimony would support the defense theory that the victim was "motivated by trying to create legal trouble for [defendant] and then has some kind of plan in mind that if he makes an allegation of a gun, then the police are going to be more quick to respond and, in this case, arrest [defendant]." The trial court sustained the objection. The court questioned how the evidence was relevant, stated that extrinsic evidence of a previous false accusation was not admissible, and noted that a principle underlying OEC 404 is avoiding "a trial within a trial about a previous allegation. And in this case it's not even tied to the defendant[.]" The court reasoned that, to be admissible under OEC 404,

> "[t]he evidence has to be independently relevant for a non-character purpose. The proponent of the evidence has to offer sufficient proof that the uncharged misconduct was committed and that the defendant committed it. And the probative value of the uncharged misconduct must not be substantially outweighed by the dangers or considerations set forth in [OEC] 403.
>
> "I don't know how else to go through this by saying that none of those factors would be established based on the testimony that you've elicited thus far. It's completely absent. You haven't established sufficient proof that the uncharged misconduct was committed, that in this case you're—and again, you're offering it not for an act by the defendant but by the alleged victim.
>
> "And then the probative value certainly is not outweighed via testimony in—and I'm only speaking to the testimony here as a previous allegation that the alleged victim made against this witness, not even the defendant, involving a pellet gun. And it's not relevant yet because there's no—there's nothing to tie defendant's knowledge of that at this point to it whatsoever as to this false—if what you're trying to—I understand your theory is that this was a false allegation involving a pellet gun. But none of those factors have been met.

exclusion of the testimony about the victim's wife's accusation regarding the pellet gun.

"So I'm sustaining the objection on relevance and also under [OEC] 404 as to all the testimony that was just elicited * * * from this witness during your offer of proof."

Subsequently, defendant offered testimony from two witnesses, his stepdaughter and his partner. Both witnesses testified that they had been sitting with defendant and the stepdaughter's brother-in-law around the fire pit on the stepdaughter's property and that defendant and his partner had been drinking some beers. Both witnesses testified that defendant called out, "[victim] is a bitch." Defendant's partner testified that defendant did so because the victim's wife said, "Are you faggots throwing rocks at my house?" and, in a statement unresponsive to a question on cross-examination, because defendant was trying to stick up for his stepdaughter regarding unspecified past problems between the victim and defendant's stepdaughter. According to defendant's partner, when the police arrived, he told everyone to go into the house. Defendant's stepdaughter testified that she went inside and called her grandmother about the incident. Both witnesses testified that they, the brother-in-law, and defendant did not have a pellet gun, and that they did not see defendant throw rocks at the victim's house.

The jury found defendant guilty of menacing and disorderly conduct, and the trial court entered judgment accordingly. Defendant appeals.

Defendant contends that, under OEC 404(3), the evidence was admissible "to demonstrate that the victim had a motive to lie" and "to complete the picture of the incident." Defendant also argues that the evidence was relevant to support his theory of the case—namely, that the victim lied about whether defendant fired a pellet gun. Regarding the balancing required by OEC 403, defendant argues that the testimony had great probative value because it related to the victim's credibility and that there was little danger of unfair prejudice or confusion.

The state argues that the testimony was inadmissible under OEC 404(3) because a "person" as used in that rule does not include a witness. In support of its position, the state contends for the first time on appeal that OEC 608(2) provides that a party may not impeach a witness with extrinsic

evidence of prior bad acts, and so only OEC 608(2) governs the admissibility of "other acts" evidence about a witness. The state also argues that the evidence was not relevant, because the incident was too attenuated and uncertain. Finally, the state contends, the trial court properly excluded the evidence under OEC 403, because its probative value was outweighed by the danger of unfair prejudice.

As noted, the trial court excluded the evidence on the bases of relevance and OEC 404(3). We begin with the question of relevance. We review determinations of relevance for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401.

Here, defendant offered his stepdaughter's testimony to show the victim's bias or partiality, specifically, that the victim and his wife were biased against him and his family and therefore that the facts concerning defendant's conduct to which the victim testified were less probable. Evidence of a witness's bias generally is relevant. *State v. Haugen*, 349 Or 174, 193, 243 P3d 31 (2010). Bias may arise in a variety of ways:

> " 'Bias may be evidenced by personal, family, romantic, sexual, or business relationships; by employment or termination of employment by a party; by statements or conduct indicating positive or negative feelings of the witness towards a party; by claims, litigation or settlements between the witness and a party; by prior fights or quarrels; by a party offering to give or a witness offering to receive a bribe; by payment of compensation of any nature by the party to the witness; by granting or promising to grant special advantage or favoritism; by a showing of a motive to curry favor with a party, such as showing that an agreement to grant immunity, recommend leniency, drop another charge or any other concession by a prosecutor or other law enforcement officer to a witness. *See* McCormick, Evidence § 40 at 78-80 (2d ed 1972).' "

*State v. Brown*, 299 Or 143, 150, 699 P2d 1122 (1985) (quoting Laird C. Kirkpatrick, *Oregon Evidence* 263 (1982)). "To be

relevant, evidence introduced to impeach a witness for bias or interest need only have a mere tendency to show the bias or interest of the witness." *State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984). Unless there is a reason to exclude relevant evidence, it must be received. *Id.*; *see also* OEC 402 (providing that relevant evidence is admissible "except as otherwise provided by the Oregon Evidence Code, by the Constitutions of the United States and Oregon, or by Oregon statutory and decisional law").

A party may impeach a witness for bias through evidence of the witness's relationship with another where the bias resulting from the relationship is a matter of reasonable inference rather than mere speculation. In *State v. Knobel*, 97 Or App 559, 566-67, 777 P2d 985 (1989), *rev den*, 309 Or 522 (1990), the defendant sought to cross-examine the prosecution's witness, a deputy sheriff, about his awareness that the defendant had written derogatory articles about the sheriff and that the sheriff disliked the defendant and supported pressing charges against him. We concluded that, in light of the employment relationship between the sheriff and the witness, the trial court erred by denying the defendant the opportunity to cross-examine about bias. On the other hand, in *State v. Phillips*, 245 Or App 38, 46, 261 P3d 55 (2011), we concluded that the string of inferences required to support the defendant's theory of bias simply was too long. There, the defendant sought to offer a video recording of an altercation between himself and a police officer, Kaufman, to impeach the testimony of the arresting officer, Cook, who did not take part in the subsequent altercation. We explained:

> "[D]efendant offered no evidence to establish any motive on the part of Cook to lie to protect Kaufman beyond the mere fact that both were police officers. Indeed, defendant's theory of bias was broader still. Defense counsel argued to the trial court that Cook's actions as shown on the video 'shows that the Hillsboro Police Department was out to—not to be fair to my client, was out to get him.' As we recognized in *State v. Harberts*, 198 Or App 546, 561, 108 P3d 1201 (2005), *rev den*, 341 Or 80 (2006), when evaluating the relevance of evidence proffered to show the bias of a witness, reasonable inferences are permissible but 'speculation

* * * is not.' Here, the string of inferences defendant would have us unwind is simply too long."

245 Or App at 46.

Here, defendant offered evidence of the victim's wife's previous dispute with defendant's stepdaughter to show that the victim, at the time of the charged crimes, had a motive to make a false report about defendant. Although some inferences are required to connect that previous dispute to the victim's attitude toward defendant, the inferences are permissible. A jury could reasonably infer that, in light of the familial relationships among the persons involved—that is, between the victim and his wife and between defendant and his stepdaughter—that the victim had reason to be biased against defendant. From that, a jury could infer that the victim's account was less credible than it would have been in the absence of evidence of the earlier dispute. Defendant's proffered evidence had at least a "tendency to show the bias or interest of the witness," *Hubbard*, 297 Or at 796, and thus was relevant.

We next consider whether the trial court properly excluded the evidence under OEC 404(3), which provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

We initially reject the state's argument that OEC 404(3) is limited to evidence concerning a criminal defendant's conduct. Given a permissible purpose, a criminal defendant can "introduce evidence of other crimes or wrongful acts—for example, by a victim, codefendant, or other suspect—under OEC 404(3)." *State v. Moore / Coen*, 349 Or 371, 390, 245 P3d 101 (2010), *cert den*, ____ US ____ , 131 S Ct 2461 (2011).

Rule 404(3), though, "precludes the admission of evidence of a person's prior 'crimes, wrongs or acts' to prove the character of that person to show that he or she later acted in conformity with them." *State v. Hale*, 335 Or 612, 623, 75 P3d

448 (2003), *cert den*, 541 US 942 (2004). In *Hale*, the defendant contended that another person, Susbauer, was the perpetrator of the charged crimes, and the defendant proffered evidence that Susbauer was stopped and ordered by police to lie face down on the ground. *Id.* at 617, 622. The defendant argued that the evidence would help establish that Susbauer committed the crimes at issue, because the perpetrator of those crimes had ordered the male victims to lie face down on the ground. *Id.* at 622. The Supreme Court concluded that the evidence was not subject to analysis under OEC 404(3):

> "The fact that a police officer once ordered Susbauer to lie face down is not itself a 'crime' or a 'wrong' or an 'act' *of Susbauer's*, and we cannot see how it would tend to prove Susbauer's character in any event. More importantly, defendant did not attempt to establish that Susbauer acted in conformity with *his own prior act* of lying face down. The proffered evidence does not fit within any category of what is known as 'other crimes' evidence under OEC 404(3), and that rule does not provide a basis for excluding it."

*Id.* at 623 (emphasis in original).

Similarly, here, the proffered evidence concerned another crime, wrong, or act by the victim's wife, but it was not offered to show that the victim's wife acted in conformity with her prior act. Rather, the evidence of her prior act of falsely accusing the stepdaughter of criminal conduct and of her hostility towards the stepdaughter was offered to show the motive for the *victim's* accusation that defendant shot the victim's house with a pellet gun. Thus, OEC 404(3)'s prohibition on the admission of evidence to show a general "propensity" by a person—in this case, the victim witness—to commit certain acts because of other conduct that person has committed did not provide a basis for excluding the evidence.[2]

---

[2] As noted, the state indirectly suggests for the first time that the evidence was inadmissible under OEC 608(2), which provides:

> "Specific instances of *the conduct of a witness*, for the purpose of attacking or supporting *the credibility of the witness*, other than conviction of crime as provided in ORS 40.355, may not be proved by extrinsic evidence. Further, such specific instances of conduct may not, even if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness."

(Emphasis added.) The state does not argue that we should affirm based on the application of OEC 608(2), under the rule in *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (setting out requirements

The state further argues that the evidence was properly excluded under OEC 403, which provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." We conclude that the trial court did not and, under the circumstances, could not exclude the evidence under OEC 403.

The trial court briefly referred to OEC 403 before it then went on to explain why it was excluding the evidence based on OEC 404(3) and relevance. The court did not state that it was excluding the evidence based on OEC 403, and the court did not place on the record any analysis of the balancing test used under OEC 403. *See State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987) (setting out steps required in analyzing an OEC 403 objection). In any event, a trial court's discretion to exclude evidence under OEC 403 does not extend to "exclusion of an initial showing, by relevant evidence, of sufficient facts from which the bias or interest of a witness may be inferred." *Hubbard*, 297 Or at 798.

Here, the victim's testimony suggested a circumstance of aggression by defendant. Defendant offered his stepdaughter's testimony to show a bias that the victim had against defendant given the level of hostility between the victim's wife and his stepdaughter, and with the exclusion of the evidence, that bias eluded the jury's attention. This is not a case in which the victim's alleged bias against defendant was apparent from the other evidence at trial. *Cf. State v. Fish*, 239 Or App 1, 7-8, 243 P3d 873 (2010) (where the defendant was accused of assaulting victim during brawl and the defendant and victim were strangers to each other before brawl, evidence that the defendant later made angry comment about victim was not initial showing of bias; the defendant's and victim's adversarial positions were apparent). When the trial court excluded the stepdaughter's proffered evidence at

___

for "right for the wrong reason" analysis). We accordingly do not decide whether OEC 608(2) applies in this instance, but we note that the Supreme Court has said that evidence of a motive to lie at trial or bias on the part of a witness is not evidence of character for truthfulness for purposes of OEC 608(1). *State v. Carr*, 302 Or 20, 26-27, 725 P2d 1287 (1986).

the beginning of defendant's case-in-chief, there had been no other showing of the victim's bias.[3] Under *Hubbard*, 297 Or at 798, the trial court could not have excluded the evidence of the victim's bias on the basis of OEC 403.

The state offers no argument that, if the trial court erred by excluding the evidence, the error was harmless, nor does our review of the record persuade us that the error was harmless. When an error results in the exclusion of bias evidence, the error is harmless if either "(1) despite the exclusion, the jury nonetheless had an adequate opportunity to assess [the witness's] credibility; or (2) [the witness's] credibility was not important to the outcome of the trial." *Titus*, 328 Or at 482. Given the differences between the victim's testimony and the testimony of defendant's stepdaughter and partner concerning what happened that evening and the importance of the victim's credibility to the prosecution's case; the offered testimony of defendant's stepdaughter describing a specific incident and a level of animosity between her and the victim's wife that included wife's willingness to make a false report to the police; and the trial court's instruction to the jury to disregard testimony by defendant's partner, we conclude that the error was not harmless.

Reversed and remanded.

---

[3] After the stepdaughter testified, defendant's partner testified. He said defendant called the victim a "bitch" because the victim's wife called out, "Are you faggots throwing rocks at my house?" On cross-examination, defendant's partner also made a nonresponsive statement that defendant was trying to stick up for his stepdaughter. When defendant's partner attempted to testify that he had heard the neighbors call out "faggot" from across the street numerous times, that the police had been called because of that conduct, and that the victim engaged in threatening behavior towards his daughter, the trial court struck the testimony as unresponsive to questioning on cross-examination and instructed the jury to disregard it.