Submitted July 28, affirmed December 14, 2011

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**LEROY TORRES-RIVAS,**
*Defendant-Appellant.*

Washington County Circuit Court
D083366M; A142542

268 P3d 729

Jedediah Peterson, Deputy Public Defender, and Peter Gartlan, Chief Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Laura S. Anderson, Senior Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals from his conviction for one count of menacing, ORS 163.190,[1] and one count of second-degree disorderly conduct, ORS 166.025,[2] raising two assignments of error. We reject defendant's first assignment of error without discussion. In his second assignment of error, defendant argues that the trial court erred in excluding the testimony of the victim's neighbor that she had heard the victim say that "the Mexicans are taking all the jobs." Defendant sought admission of that statement to show the victim's bias toward defendant, who is Hispanic.[3] The trial court concluded that defendant had failed to establish an adequate foundation showing that the statement was probative of such bias and therefore excluded the testimony. We affirm on the ground that the error was harmless.

Because defendant was convicted after a jury trial, we state the pertinent facts in the light most favorable to the state. *State v. Johnson*, 342 Or 596, 598, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008). However, when we evaluate whether the erroneous admission of evidence was *harmless*, we "review all pertinent portions of the record, not just those portions most favorable to the state." *State v. Maiden*, 222 Or App 9, 11, 191 P3d 803 (2008), *rev den*, 345 Or 618 (2009). Defendant and the victim lived in the same apartment complex, and, on the day that defendant committed the charged crimes, the victim had just returned home with his family when defendant confronted him in the parking lot of the complex. Defendant loudly asked the victim several times if the victim had called the defendant's son "a dirty [expletive]

---

[1] ORS 163.190 provides, in part:

"A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury."

[2] ORS 166.025 provides, in part:

"(1)  A person commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:

"(a) Engages in fighting or in violent, tumultuous or threatening behavior[.]"

[3] The record does not indicate defendant's nationality.

Mexican." The victim denied having done so.[4] Defendant told the victim that he was going to "kick [his] ass" and "[expletive] kill him," and "gut him like a fish." Defendant also motioned toward the victim and made lunging gestures toward him. The victim began to retreat toward his apartment; defendant followed him for a short distance and then stopped. The victim called the police, and defendant was arrested.

Defendant was indicted for one count of menacing and one count of second-degree disorderly conduct. At trial, after the victim testified about the confrontation, defense counsel cross-examined the victim about his attitude toward Mexicans. Defense counsel asked the victim whether he had ever used racial slurs against Mexicans or was concerned about "illegal immigrants taking other people's jobs." The victim denied ever using racial slurs, and he denied having any concern about illegal immigrants.

Defendant called the victim's neighbor, Aspria, to testify about the victim's bias. Aspria testified that she had witnessed the confrontation between the victim and defendant and that, when the victim had returned to his apartment, he had slammed the door and said "[expletive] Mexican." Defendant also proffered two other statements made by the victim to show his bias under OEC 609-1.[5] Outside the presence of the jury, Aspria testified that she had observed the victim building a fence in his backyard and, when she had asked him what the fence was for, he said, "Well, I'm putting the fence up to keep—keeping Mexicans out of my yard." Aspria also testified that she had once overheard the victim's side of a telephone conversation in which the victim had said that "the Mexicans are taking all the jobs." Aspria testified that the victim had "seemed a little angry" when he made

---

[4] Later, during the confrontation, defendant's son told defendant that he had lied about that statement.

[5] OEC 609-1 provides, in part:

"(1) The credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the statement shall be shown or disclosed to the opposing party."

that statement. The trial court asked Aspria if she had heard the other side of the telephone conversation, and she said that she had not. The trial court also asked Aspria if she thought that the victim's use of the term "Mexicans" had been derogatory, and she said that she did think so, "because of the tone of his voice."

The trial court admitted into evidence the statement about the fence, but it excluded the statement that "the Mexicans are taking all the jobs." As the court explained,

"[i]n regards to the Mexicans are taking the jobs, I don't feel that the court [inaudible] enough information and since we don't have the other part of that conversation for the court to get it in a context of whether he was using that term in any kind of a negative or derogatory manner, maybe just [inaudible] stating it back that some Mexicans are [taking] jobs and that's what it is, but not necessarily in a derogatory manner."

Defendant was convicted by a jury.

On appeal, defendant argues that the trial court erred in excluding the victim's statement, as relayed by Aspria, that "the Mexicans are taking all the jobs," because "defendant [had] laid a sufficient foundation to have the evidence go to the jury." In defendant's view, any ambiguity that might have inhered in the victim's statement was clarified when evidence of the victim's other statements was admitted and, although the trial court's interpretation of the victim's statement as not necessarily derogatory was plausible, "defendant's proposed interpretation of the statement is even more likely." The error was not harmless, defendant argues, because "the main evidence against defendant was the account of [the victim] and his wife," and the jury's "belief in [the victim's] testimony could have been different if it had been presented with more evidence of [the victim's] bias."

The state replies that the trial court did not err because defendant failed to lay an adequate foundation "by eliciting from the witness (even if it was possible) more circumstances of the statement that would indicate the victim's racial bias." In the state's view, the court's exclusion of the statement was within its discretion because the statements that were admitted had been sufficient to make the "initial

showing" of the victim's bias under *State v. Hubbard*, 297 Or 789, 798, 688 P2d 1311 (1984), and that, accordingly, exclusion of the statement was proper under OEC 403[6] because the statement would have been cumulative to the other statements relevant to the victim's bias. The state also asserts that the victim's bias was apparent from the totality of the circumstances—that is, that defendant had confronted the victim because of the victim's alleged racial slur toward defendant's son.

We review the trial court's evidentiary ruling for errors of law. *State v. Arellano*, 149 Or App 86, 90, 941 P2d 1089, *rev dismissed*, 327 Or 555 (1998). Evidentiary error is not presumed to be harmful, OEC 103(1), and, thus, we must affirm defendant's conviction if "there [is] little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

As an initial matter, the state's reliance on *Hubbard* is misplaced because the trial court did not exclude the victim's statement under OEC 403. As explained above, the trial court did not exclude the victim's statement because it was cumulative of the other evidence of bias that defendant elicited from Aspria; rather, the court excluded the statement on the ground that defendant had failed to lay an adequate foundation showing that the statement was relevant for bias at all. We agree with defendant that the trial court erred in that regard because, in light of the other statements to which Aspria testified—*viz.*, that the victim had said "[expletive] Mexican" after his confrontation with defendant and that the victim had told Aspria that he was building a fence to "keep the Mexicans out of my yard"—the victim's statement that "the Mexicans are taking all the jobs" met OEC 609-1's requirement that the statement "show bias or interest." Accordingly, the trial court erred in concluding that the statement was not relevant to show the victim's bias.

---

[6] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

However, we conclude that the error was harmless. The statements that the trial court admitted, if believed, were more than sufficient to show the victim's bias. Indeed, the jury had before it Aspria's testimony about the fence *and* Aspria's testimony that, after his confrontation with defendant, the victim had said "[expletive] Mexican." In light of that evidence of the victim's bias, there is little likelihood that the trial court's exclusion of the statement affected the jury's verdict.

Affirmed.