Argued and submitted April 19; resubmitted en banc December 3, 2012, reversed and remanded March 27, 2013

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JUAN VALLE,
*Defendant-Appellant.*

Marion County Circuit Court
09C48555; A145111

298 P3d 1237

Kevin T. Lafky argued the cause for appellant. With him on the brief was Lafky & Lafky.

Douglas F. Zier, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Haselton, Chief Judge, and Armstrong, Wollheim, Schuman, Ortega, Sercombe, Duncan, Nakamoto, and Egan, Judges.

DUNCAN, J.

Nakamoto, J., dissenting.

**DUNCAN, J.**

In this criminal case, defendant appeals the trial court's judgment of conviction and sentence, assigning error to the trial court's exclusion of impeachment evidence. For the reasons explained below, we conclude that the trial court erred in excluding the evidence and that the error was not harmless. Therefore, we reverse and remand.[1]

Defendant was charged with two counts of first-degree sodomy, ORS 163.405, and four counts of second-degree sexual abuse, ORS 163.425. The charges were based on allegations by M, defendant's stepdaughter.

In 2008, when M was 16 years old, she wanted to move out of the family home and marry her boyfriend. After defendant and M's mother objected, M sought to be emancipated. In May 2008, M spoke with Officer Puente, her high school's resource officer, about her desire to be emancipated. During that conversation, M told Puente that defendant had touched her on the knee and that it had made her uncomfortable.

In October 2008, M ran away from home and moved in with her boyfriend and his mother. M's mother reported that M had run away. Puente discovered that M was living with her boyfriend and his mother, and he brought M back to her home. In November 2008, M told Puente that defendant had sodomized and sexually abused her on several occasions between 2004 and 2008. Based on M's allegations, the Department of Human Services (DHS) filed a dependency case. The juvenile court took jurisdiction over M, and DHS placed her in foster care. M was represented by an attorney in the dependency case. On behalf of M, who is not a United States citizen, M's attorney applied for a U visa on the ground that M was a victim of abuse. *See* 8 CFR § 214.14 (describing U visas).

---

[1] On appeal, defendant raises three assignments of error. In each, he challenges the trial court's exclusion of impeachment evidence. Because we agree that the trial court erred as defendant alleges in his third assignment of error, we reverse and remand for a new trial. Because the record may develop differently on remand, we do not reach defendant's first and second assignments of error. *Shank v. Board of Nursing*, 220 Or App 228, 238 n 8, 185 P3d 532 (2008) (declining to address, *inter alia*, "evidentiary issues that may or may not arise on remand").

During the trial in this case, defendant sought to cross-examine M about the fact that she had applied for the U visa. The parties and the court discussed the issue outside the presence of the jury. The prosecutor told the court that a U visa is a "form of visa that allows a victim of a crime to remain in the country." She also told the court that her office had "sign[ed] off" on M's application, a process in which, as the prosecutor described it, her office certifies that the applicant "is in fact the victim of a crime who's participating in a criminal prosecution." Defense counsel told the court that a U visa is "a form of visa that a person gets if they're a victim of domestic violence or sexual abuse and they have to be that—be in fact a victim in order for that to be granted for them," and he asserted that M's application for the visa was relevant to "her motive to fabricate." The court then questioned defense counsel about the visa:

"THE COURT: How long does it last?

"[DEFENSE COUNSEL]: I believe it lasts as long as they're in the country if it's been established that they're actually a victim.

"THE COURT: So if she's a victim, she can get a visa for 100 years?

"[DEFENSE COUNSEL]: Or she can eventually obtain citizenship that way.

"THE COURT: Do you know that for a fact?

"[DEFENSE COUNSEL]: I do not know the end day of it, but I do know from previous cases that—

"THE COURT: *I'm not going to let you go into it. I don't know enough about it. Frankly, I don't think you do either.*"

(Emphasis added.) Defense counsel then made an offer of proof, questioning M:

"[DEFENSE COUNSEL]: [Y]ou have applied— actually, I guess I need to back up. You are not a United States citizen, correct?

"THE WITNESS: Correct.

"[DEFENSE COUNSEL]: And you have applied for permission to stay in this country now that you're 18?

"THE WITNESS: Yes.

"[DEFENSE COUNSEL]: *And the nature of that application was under this domestic violence or sexual abuse violence victims?*

"THE WITNESS: Uh-huh.

"[DEFENSE COUNSEL]: I believe it's part of the Violence Against Women Act, if I recall correctly.

"THE WITNESS: It's not a woman. It's not for womans [*sic*] it's just like a juvenile—it's like for young—for, well, it doesn't matter the age, but like it's a four-year—it's just for four years, the U visa, and then if I apply to do it again, then it could go to like stay here for like four more years, and then after that, like residency if I will have nothing like tickets and that.

"[DEFENSE COUNSEL]: *Is it your understanding and belief that whether or not that gets granted for you, hinges on whether or not you are a victim of sex abuse?*

"* * * * *

"THE WITNESS: *Yes. It's not really like if it's I'm a victim, it's like what happened in the case and if I was abused.*

"[DEFENSE COUNSEL]: This would end my offer of proof, Your Honor.

"THE COURT: All right. *And as I say, none of us seem[s] to understand it quite well enough to allow it in or out.* Bring the jury back. *I guess another way to put it is based upon what I've heard the visa is—the cause of the visa is speculative, at best.*"

(Emphases added.)

Thus, it was undisputed before the trial court that (1) a U visa is a type of visa available to victims of domestic violence and sexual abuse, (2) M had applied for a U visa on the ground that she had been abused, and (3) the prosecutor's office had "sign[ed] off" on M's application, certifying that M was a victim of a crime and was participating in a criminal prosecution. In addition, it was apparent that M understood that her eligibility for the visa was dependent on whether she had been abused; she had applied for the visa on the

ground that she had been abused, and, when asked whether her eligibility for the visa hinged on whether she was a victim of sexual abuse, she answered, "Yes. It's not really like if it's I'm a victim, it's like what happened in the case and *if I was abused*." (Emphasis added.) It was also apparent that M understood that the visa would benefit her; she had applied for it, and she testified that it would enable her to stay in the country for four years, could be renewed for another four years, and, after that, she could become a resident.

The trial court ruled that defendant could not question M about her application for the U visa, stating that "none of us seem[s] to understand it quite well enough to allow it in or out" and that "the cause of the visa is speculative, at best." Thus, it appears that the trial court excluded the evidence on the ground that defendant had failed to present sufficient information about the eligibility requirements of the U visa and, therefore, had failed to establish that evidence of M's application for the visa was relevant.

Whether evidence is relevant is a question of law, which we review for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999) (evidence is either "relevant or it is not"). For the reasons explained below, we conclude that the evidence that defendant sought to introduce—that M had applied for a U visa on the ground that she was a victim of abuse—was relevant impeachment evidence.

We begin our analysis with the applicable law. A party is entitled to impeach a witness with evidence regarding the witness's bias or interest. *State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984); *State v. Nguyen*, 222 Or App 55, 60, 191 P3d 767 (2008), *rev den*, 345 Or 690 (2009). As the Supreme Court has observed, it is "always permissible" to show the bias or interest of a witness because such evidence goes to the witness's credibility. *Hubbard*, 297 Or at 796 (internal quotation marks omitted). That observation is in keeping with the principle that "the jury is entitled to hear all the facts relating to the possible bias and self-interest of the witness." *State v. Sheeler*, 15 Or App 96, 100, 514 P2d 1370 (1973). Thus, "[u]nless there is reason to exclude [evidence of bias or interest], it must be received." *State v. Prange*, 247 Or App 254, 263-64, 268 P3d 749 (2011). A party

is entitled to make an "initial showing of [a witness's] bias or interest." *Hubbard*, 297 Or at 798 (internal quotation marks omitted). Only after a party has made such a showing does a trial court have the discretion to exclude additional evidence of bias or interest on the ground, for example, that it is cumulative. *Id*. As the Supreme Court has explained,

> "The discretion of the trial judge to exclude evidence relevant to bias or interest only obtains once sufficient facts have been established from which the jury may infer that bias or interest. *Typically, this would require wide latitude be given to the cross-examiner to ask and receive answers to questions sufficient to demonstrate to the jury the nature of the bias or interest of the witness.*"

*Id.* (emphasis added). That is particularly true for a defendant in a criminal case, who has the right, under both the state and federal constitutions, to confront witnesses, a right that includes the right to question a witness about circumstances from which a jury could reasonably infer that the witness has a motive to testify in a certain manner. US Const, Amend VI; Or Const, Art I, § 11; *Davis v. Alaska*, 415 US 308, 318, 94 S Ct 1105, 39 L Ed 2d 347 (1974) (trial court violated the youth's rights under the Sixth Amendment's Confrontation Clause by prohibiting the youth from impeaching the state's witness with evidence that the witness was on probation); *State v. Najibi*, 150 Or App 194, 204, 945 P2d 1093 (1997), *rev den*, 326 Or 494 (1998) (the defendant had a constitutional right to cross-examine a prosecution witness about her involvement in criminal activity for which she could still be prosecuted because "[t]he possibility of prosecution was sufficient to create an inference that [the witness's] testimony was motivated by a desire to curry favor with the state").

To lay a sufficient foundation for the admission of impeachment evidence, all that a party needs to do is show that the evidence is relevant. *Hubbard*, 297 Or at 796. Like any other type of evidence, impeachment evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401 (defining "relevant evidence"). The

threshold for establishing that evidence is relevant is "very low." *State v. Hampton*, 317 Or 251, 255 n 8, 855 P2d 621 (1993). The inference for which the proponent is offering the evidence "need not be [a] necessary, or even the most probable, inference." *Id.* (internal quotation marks omitted). Accordingly, "[i]t is error for the trial judge to exclude evidence that establishes sufficient facts from which bias or interest of a witness *may be inferred.*" *Najibi*, 150 Or App at 203-04 (emphasis added); *see also Hubbard*, 297 Or at 796 ("To be relevant, evidence introduced to impeach a witness for bias or interest need only have a *mere tendency* to show the bias or interest of the witness." (Emphasis added.)).

Thus, it is error for a trial court to exclude evidence from which a jury could reasonably infer that the witness has a motive to testify in a certain manner. For example, in a criminal case, it is error for a trial court to exclude evidence from which a jury could reasonably infer that a prosecution witness has a motive to curry favor with the state. Such evidence includes evidence that the witness is on probation, has pending charges, or is the subject of a criminal investigation. *See, e.g.*, *Davis*, 415 US at 318 (trial court erred by refusing to allow the youth to impeach a prosecution witness with evidence that the witness was on probation); *State v. Shelly*, 212 Or App 65, 68, 157 P3d 234 (2007) (trial court erred by refusing to allow the defendant to impeach the victim with evidence that the victim was on probation and had been the subject of a recent criminal investigation); *State v. Weinstein*, 108 Or App 486, 487, 814 P2d 565 (1991) (trial court erred by refusing to allow the defendant to impeach an assault victim by showing that the victim was on probation and therefore had a motive to testify about the fight in a manner that would protect against the risk that his probation would be revoked); *State v. Presley*, 84 Or App 1, 5, 733 P2d 452 (1987) (trial court erred by prohibiting the defendant from cross-examining the state's informant about his theft charge).

Three other cases provide additional, useful illustrations of the rule that a party is entitled to present evidence from which a jury can draw inferences relating to a witness's potential bias or self-interest: *Hubbard*, 297 Or

789, *State v. Muldrew*, 229 Or App 219, 210 P3d 936 (2009), and *State v. Knobel*, 97 Or App 559, 777 P2d 985 (1989), *rev den*, 309 Or 522 (1990).

In *Hubbard*, the parties disputed whether the officer who had arrested the defendant had used excessive force. To impeach the officer's testimony that he had not used excessive force, the defendant attempted to cross-examine the officer regarding his knowledge of the potential sanctions for violating his department's procedures for handling suspects. "The alleged purpose of the questioning was to show that the officer had a personal interest in the outcome of the case and that his version of the events might be slanted because of his desire to avoid departmental discipline." 297 Or at 792. The trial court prohibited the questioning, in part because the defendant had not filed a complaint against the officer for using excessive force. On review, the Supreme Court held that the trial court erred by prohibiting the questioning. Although the defendant had not filed a complaint against the officer, the court rejected the state's argument that the evidence that that defendant sought to elicit was "too remote to be relevant to the bias or interest of the police officer witness." *Id.* at 801. The court explained, "[A] testifying officer's knowledge of departmental procedures for handling suspects and potential sanctions for violation of the procedures tends to show that the officer has an interest in testifying that he followed such procedures, whether he in fact did so." *Id.* The court concluded that the evidence was relevant, there was no ground on which to exclude it, and excluding it was harmful because "the jury was not fully informed of matters affecting the credibility of the police officer witness." *Id.* at 802.

In *Muldrew*, the defendant sought to impeach the officer who had arrested him by showing that the officer had a personal interest in ensuring the defendant's conviction because a conviction could help protect the officer from civil liability for injuries that the defendant had sustained during his arrest. Specifically, the defendant sought to impeach the officer by presenting evidence that (1) the officer had been trained that "the typical situation in which police find

themselves civilly liable [for injuries to arrestees is] when there is a use of force, and no conviction for Resist[ing] Arrest," 229 Or App at 224 (second brackets in original), and (2) the officer's report included the statement, "I recommend that the DA's office charge [the defendant] with Resist[ing] Arrest, based on the injuries he received," *id*. at 222-23 (second brackets in original).

The state argued that the officer's recommendation was "not probative of anything." *Id*. at 225. According to the state, the recommendation did not impeach the officer's credibility because it was the type of recommendation that police officers routinely make in reports, and the officer was "just forwarding [the recommendation] on to the DA's office for a charging decision." *Id*. The defendant responded, "The State is arguing that *** [the recommendation] doesn't show bias, and that's an argument that [the state] can make to the jury," but it is not a basis for excluding the evidence. *Id*. The trial court excluded the evidence, and the defendant was convicted. He appealed, and we reversed. We concluded that the trial court erred in excluding evidence of the officer's recommendation that the district attorney charge the defendant with resisting arrest, which we described as "the critical piece of evidence necessary to create an issue about [the officer's] credibility." *Id*. at 229. We further concluded that the error required reversal because it deprived the jury of the information that it needed to properly evaluate the officer's credibility. *Id*. at 230.

In *Knobel*, the defendant sought to impeach a witness with evidence that the witness's employer was hostile toward the defendant. The defendant was a newspaper reporter and the witness was employed by the sheriff. The defendant wanted to impeach the witness with evidence that the witness knew that the sheriff—who had been the subject of negative news stories written by the defendant—did not like the defendant and thought that it was a good idea to press charges against him. The trial court prohibited the questioning. On appeal, we held that the questioning should have been allowed. 97 Or App at 566. We explained, "In view of [the witness's] employe-employer relationship

with [the sheriff], the evidence that [the] defendant sought to elicit was relevant." *Id.* Citing *Hubbard*, we concluded that the trial court erred and that the error required reversal because it "den[ied] the jury an adequate opportunity to assess [the witness's] credibility." *Id.* at 567.

As the above cases illustrate, a party lays a sufficient foundation for the admission of evidence to impeach a witness if the party shows that the evidence could support a reasonable inference that the witness is biased or self-interested. Evidence from which a reasonable jury could infer that a witness has a motive to testify in a certain manner is relevant impeachment evidence. The inference need not be the only one that could be drawn, or even the most probable. At the admissibility stage, the only question is whether a jury could find that the witness has a motive to testify in a certain manner. Whether the witness actually has a motive and, if so, whether the motive has influenced the witness's testimony, are separate and subsequent questions for the jury.

In this case, defendant laid a sufficient foundation for the admission of evidence that M had applied for a U visa on the ground that she had been abused. As discussed above, all defendant had to do to lay a sufficient foundation was show that the evidence was relevant, and, to do that, all he had to show was that the evidence had a tendency, however slight, to demonstrate that M had a personal interest in testifying against him. He did that. He presented information, in the form of M's own testimony, that M had applied for a U visa on the ground that she was a victim of abuse. From that testimony alone, a jury could infer that M had a personal interest in testifying that she had been abused. Simply put, M had applied for an opportunity to stay in the country on the ground that she had been abused; based on that fact, a jury could reasonably infer that she had a personal interest in testifying in a manner consistent with her application for that opportunity.[2] Thus, defendant's proffered impeachment evidence was relevant, and, because

---

[2] Moreover, there was undisputed information before the trial court that M had applied for the visa in connection with this criminal case; the prosecutor informed the court that her office had "sign[ed] off" on M's visa application. Thus, not only could a jury infer that M had a personal interest in testifying that she was

it was necessary to make an initial showing of M's self-interest, the trial court erred in excluding it.

The error requires reversal because excluding the evidence was not harmless. OEC 103 (evidentiary error is not reversible "unless a substantial right of the party is affected"). As in *Hubbard*, *Knobel*, and *Muldrew*, the trial court's exclusion of evidence from which a jury could have inferred that M had a personal interest in testifying in a certain manner was harmful because the jury was not fully informed of matters relevant to an assessment of M's credibility, which was essential to the state's case. In particular, the jury did not have information that was relevant to whether M had a motive to fabricate her allegations against defendant. Throughout the case, the prosecutor emphasized that M did not have a motive to fabricate. The trial court's exclusion of defendant's proffered impeachment evidence deprived defendant of an opportunity to meet that argument and deprived the jury of an opportunity to consider all of the information relevant to M's credibility.

Therefore, we conclude that the trial court's exclusion of the evidence was reversible error, and we remand for a new trial.

The dissent would affirm. In the dissent's view, the trial court correctly excluded the evidence of M's application for the U visa under OEC 104(2)[3] because defendant failed to present sufficient evidence of a "conditional fact, namely,

a victim of sexual abuse, it also could infer that she had a interest in testifying that she was a victim of sexual abuse *by defendant*.

The dissent suggests that the information about the U visa that the prosecutor and defense counsel provided to the trial court cannot factor into our assessment of whether evidence of M's application for the visa was relevant. 255 Or App at 823 (Nakamoto, J., dissenting). According to the dissent, the only information that the trial court could consider was the testimony that defense counsel elicited from M during his offer of proof. That is incorrect. When seeking a ruling on the admissibility of evidence, parties can describe the evidence to the trial court. *See, e.g.*, *State v. R. H.*, 192 Or App 8, 19, 83 P3d 951 (2004), *rev dismissed*, 338 Or 17, 107 P3d 27 (2005) (party seeking admission of evidence can "either make a representation to the court summarizing the expected testimony or put a witness on the stand and make a formal offer of proof").

[3] OEC 104(2) provides, "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

the victim's belief or understanding that her eligibility for a U visa depended on her testimony that she was an abuse victim." 255 Or App at 822 (Nakamoto, J., dissenting). We respectfully disagree for two reasons. First, the trial court did not exclude the evidence based on conditional relevancy. Second, even if the trial court had excluded the evidence based on conditional relevancy, it would have erred; contrary to the dissent's contention, defendant was not required to present evidence that M believed that her receipt of the U visa depended on her testimony.

First, the trial court did not exclude the evidence based on conditional relevancy. The trial court did not mention conditional relevancy or OEC 104(2), and it did not identify any fact that defendant would have to prove to the jury in order for the evidence to be relevant.

Second, and more importantly, even if the trial court excluded the evidence based on conditional relevancy, it erred in doing so. The evidence—that M had applied for a U visa on the ground that she was a victim of abuse—was self-contained. No additional information was necessary to make it relevant. As explained above, a jury could reasonably infer that M had a personal interest in testifying that she was, as she asserted in her visa application, a victim of abuse.

As mentioned, the dissent contends that defendant did not lay a sufficient foundation for the admission of the fact that M had applied for a U visa because he failed to present sufficient evidence of a conditional fact, which the dissent identifies as the fact that the victim believed or understood "that her eligibility for a U visa *depended on her testimony* that she was an abuse victim." 255 Or App at 822 (Nakamoto, J., dissenting) (emphasis added). But, defendant was not required to present such evidence. He was not required to show that M believed that her eligibility for the visa hinged on her testimony. Rather, he was required to show only that her circumstances were such that a jury could reasonably infer that she *might* believe that testifying that she had been abused could advance (or at least not undermine) her effort to secure a U visa.

In other words, defendant did not have to demonstrate that there was an established *quid pro quo* relationship between M's receipt of a visa and her testimony. By way of illustration, we offer the following hypothetical. If a defendant calls his wife as a witness, the plaintiff can, on cross-examination, ask the wife if she is married to the defendant. The plaintiff does not need to first present evidence that the wife believes that she might benefit from testifying in her husband's favor. A jury could infer from the wife's circumstances alone that she has an incentive to testify in her husband's favor.

*Knobel* provides a nonhypothetical example. As discussed above, in *Knobel*, evidence that the witness's employer was hostile toward the defendant was relevant because it could support an inference that the witness had an incentive to testify against the defendant. The defendant did not have to present evidence that the witness believed that he had to testify in a certain manner in order to secure an employment benefit. Again, a jury could infer from the witness's circumstances alone that the witness had an incentive to testify in a certain manner.

Similarly, as also described above, a defendant can question a prosecution witness who has pending charges about the existence of those charges, even if the witness has not entered into an agreement with the state regarding the charges and the witness's testimony. The existence of the charges alone is sufficient to support an inference that the witness might believe that it is in his or her interest to testify in the state's favor.

One final matter deserves our attention, and that is our standard of review with respect to the exclusion of evidence based on conditional relevancy. The dissent contends that M's statements regarding what she believed or understood about the requirements for a U visa were ambiguous. 255 Or App at 822 (Nakamoto, J., dissenting). Given that, the dissent reasons that the trial court "was entitled to draw the conclusion that defendant had failed to establish sufficient evidence of what the victim believed about the requirements for a U visa." *Id.* Thus, it appears that the dissent believes that the trial court could have decided the

admissibility of the evidence either way. That is not correct. Evidence is either relevant or it is not. When determining whether a party has established that evidence is relevant, a trial court's task is to determine whether a jury could infer from the evidence the fact that the proponent is offering it to prove. The trial court is not tasked with making any factual findings. That is true for all relevancy questions, including conditional relevancy questions. As OEC 104(2) states, if the relevance of evidence is dependent upon a conditional fact, "the court shall admit it upon, or subject to, the introduction of evidence *sufficient to support a finding* of the fulfillment of the condition." (Emphasis added.) *See also Benjamin v. Wal-Mart Stores, Inc.*, 185 Or App 444, 467-68, 61 P3d 257 (2002), *rev den*, 335 Or 479 (2003) (a trial court must admit conditionally relevant evidence when the "foundation evidence [is] sufficient for the jury reasonably to have found that the condition on which relevance depended was fulfilled").

Therefore, contrary to the dissent's conclusion, the trial court could not exclude defendant's proffered evidence in this case on the ground that M's testimony was ambiguous. First, as discussed above, there was nothing ambiguous about the basis for M's application; she applied for the visa on the ground that she was a victim of abuse. Her application itself reflects an understanding of the connection between her eligibility for the visa and her status as a victim of abuse. Second, even if we focus on M's testimony, and even if we assume, for the sake of argument, that it is ambiguous, the ambiguity does not preclude admission of evidence demonstrating the fact that she applied for the visa. On this point, *State v. Phillips*, 314 Or 460, 840 P2d 666 (1992), is instructive.

In *Phillips*, the defendant was charged with sexual abuse of a child, his stepdaughter. The trial court ruled that the child, who was four years old at the time of trial, was unavailable as a witness. The trial court admitted the child's out-of-court statements implicating the defendant, but excluded statements by the child offered by the defendant for impeachment. One of the statements, which the child had made to her mother, was that "her daddy told her she

had to say bad things about [defendant] in court." *Id.* at 464 (internal quotation marks omitted). On review, the Supreme Court held that the trial court erred by excluding the statement. The court observed that the child's statement to her mother was "subject to at least two interpretations," and held that—because one of those interpretations supported the inference that the child was biased or interested—the evidence was admissible. *Id.* at 468. The court explained:

> "The state argues that the statement meant that the natural father told the child that she would be required to testify in court about the bad things that had happened to her. Defendant argues that the child's statement meant that her natural father had told her to lie. The inference for which defendant argues would be a permissible one for the trier of fact to draw; the child's statement thus could show bias or interest."

*Id.* The court concluded that the evidence was admissible for the purpose of "casting doubt on the credibility of the hearsay declarant" and that "[t]he trial court erred in excluding [it]." *Id.* at 471.

Applying *Phillips* to this case, even if, as the dissent states, the victim's testimony is ambiguous as to whether the victim believed that she had to be a victim of sexual abuse in order to obtain the U visa, that ambiguity does not preclude the admission of evidence demonstrating the fact that the victim had applied for the visa. *See also State v. Torres-Rivas*, 247 Or App 1, 6, 268 P3d 729 (2011) (although statement by victim that "'the Mexicans are taking all the jobs'" could be interpreted as biased or unbiased, it was admissible as impeachment evidence because a jury could infer it reflected a bias against Mexicans, including the defendant); *Muldrew*, 229 Or App at 229 (although officer's recommendation that the defendant be charged with resisting arrest might have been a routine recommendation, it also could have reflected an effort on the part of the officer to have the defendant charged and convicted of a crime that would help insulate the officer from civil liability for injuries he caused the defendant; therefore, it could support an inference of self-interest).

Reversed and remanded.

**NAKAMOTO, J.,** dissenting.

The trial court excluded defendant's proffer of evidence that the victim, his stepdaughter M, was an undocumented alien and had a pending application for a U visa with immigration authorities. The majority holds that the trial court improperly excluded impeachment evidence based on relevance under OEC 401. 255 Or App at 809. Although evidence of bias or interest on the part of a witness is always relevant, the experienced trial judge did not say that evidence of the victim's bias or motivation to lie based on her interest in obtaining a U visa was irrelevant or exclude the evidence on OEC 401 grounds. Rather, the trial court considered the evidence of impeachment to be "speculative" after a discussion with counsel and an offer of proof from defendant regarding the foundation for the evidence. I conclude that the trial court's ruling was based on conditional relevance under OEC 104(2), and I would affirm.

Under OEC 104(2), if "the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." In other words, conditional relevance means that one fact is relevant only if another fact—the conditional fact—is first proved. *State v. McNeely*, 330 Or 457, 462 n 5, 8 P3d 212, *cert den*, 531 US 1055 (2000). If "the trial court concludes that a reasonable jury could not find that the preliminary condition of fact has been proven, the court must exclude the evidence." *Benjamin v. Wal-Mart Stores, Inc.*, 185 Or App 444, 467, 61 P3d 257 (2002), *rev den*, 335 Or 479 (2003).

The majority assumes that OEC 401 was the basis for the court's ruling, not OEC 104(2). *See* 255 Or App at 809 (stating that the trial court appeared to have excluded evidence because defendant failed to establish that evidence of the victim's application was relevant). Yet the trial court's colloquy with trial counsel concerning the evidence of the U visa to impeach the victim does not refer to OEC 401 or relevance at all. Instead, as the majority acknowledges, it initiated a discussion with trial counsel, once the trial court

learned that the victim had applied for a U visa, that was focused on a predicate for the alleged impeachment evidence, which the majority describes as "information about the eligibility requirements of the U visa." *Id.*

More specifically, the whole of the court's discussion with counsel and then defendant's offer of proof explored whether there was evidence of a predicate condition of fact, namely, that the victim understood that she had to establish herself as a victim of abuse to obtain that visa. Defense counsel told the trial court that he "believe[d]" that U visas last as long as the victims are in the country if it is "established that they're actually a victim." Thus, defense counsel was arguing that there was a basis for the evidence because M had to establish that she actually was a victim of abuse to obtain the U visa. When the trial court expressed skepticism about counsel's knowledge as to the permitted length of stay on such a visa, defense counsel admitted that he did "not know the end day of it." At that point, the trial court stated that it would not permit defendant to go into it, observing that the court did not know enough and that counsel did not, either. Defense counsel then made an offer of proof, asking the victim questions about the U visa and her understanding of what was needed for the U visa to be granted. After the offer of proof, the trial court excluded the evidence, explaining that "none of us seem[s] to understand [the U visa] quite well enough to allow it in or out. * * * I guess another way to put it is based upon what I've heard the visa is—the cause of the visa is speculative, at best." The trial court's ruling indicated that defendant had failed to establish evidence of what the victim believed (or could have believed) about the requirements for a U visa ("none of us seem[s] to understand [the U visa] quite well enough to allow it in or out").

Thus, in contrast to the majority, I consider the issue to turn on conditional relevance and review the evidence using the analytical framework of conditional relevance under our case law. When the trial court excludes evidence based on conditional relevance, we review the court's ruling to determine "whether there was sufficient evidence for the trial court to have submitted the issue to the jury; that

is, whether the foundation evidence was sufficient for the jury reasonably to have found that the condition on which relevance depended was fulfilled." *Benjamin*, 185 Or App at 467-68. In doing so, we view the record "as consistent with the trial court's ruling, accepting reasonable inferences and reasonable credibility choices that the trial judge could have made." *Id.* at 468.

For defendant's evidence to be relevant to his claim that the victim had reason to fabricate her testimony at trial, defendant had to provide evidence of the conditional fact, namely, the victim's belief or understanding that her eligibility for a U visa depended on her testimony that she was an abuse victim. When defense counsel asked the victim whether she understood and believed that her receipt of the visa "hinges on whether or not you are a victim of sexual abuse," she testified, "Yes. It's not really like if it's I'm a victim, it's like what happened in [this] case and if I was abused." It is unclear from the victim's testimony what she understood as the requirements for a U visa. At first, the victim agreed with defense counsel that her receipt of a U visa depended on whether she is a victim of sexual abuse, but then her explanation was to the contrary, stating that her belief was that she did not have to be a victim. And the victim's later statement—a U visa requires "what happened in [this] case and if I was abused"—is also ambiguous. The victim could have meant that, for her to obtain a U visa, there needed to be a criminal case pending for sexual abuse, irrespective of whether she was actually found to be a victim of sexual abuse. Given that view of the record, the trial court was entitled to draw the conclusion that defendant had failed to establish sufficient evidence of what the victim believed about the requirements for a U visa to submit the issue of conditional relevance to the jury due to the confusing testimony.

The majority concludes that defendant did lay a sufficient foundation to show that the evidence was relevant because M would have testified that she had applied for the U visa on the ground that she was a victim of abuse. 255 Or App at 814. From that testimony alone, the majority concludes, a jury could infer that the victim could believe

that testifying in a manner consistent with her application for the U visa was in her interest, which was enough of "an initial showing of M's self-interest[.]" *Id.* at 815. Again, however, what the victim was testifying to is not very clear: She agreed with defense counsel's propositions that she had applied for permission to stay in the United States and that "the nature of that application was under this domestic violence or sexual abuse violence victims." There was no other evidence concerning U visas besides M's testimony during the offer of proof, and the trial court did not accept defense counsel's assertions about U visas during the discussion outside the jury's presence.[1]

Based on the record in light of *Benjamin*, I would affirm the trial court's exclusion of the victim's testimony of her immigration status and her application for a U visa because the court was entitled to conclude that M's testimony was confusing and insufficient for the jury reasonably to have found the predicate fact that leads to defendant's contention that the victim was motivated to fabricate her testimony against him to obtain a U visa. Accordingly, I respectfully dissent.

Wollheim and Schuman, JJ., join in this dissent.

---

[1] I respectfully disagree that the statements about the U visa by counsel— about which the trial court expressed some skepticism—were part of the offer of proof. *See* 255 Or App at 814 n 2. Although an offer of proof can be made by describing the evidence the proponent wishes to offer, in this case, defendant actually made his offer by question and answer, and defendant did not tell the trial court that he would provide additional evidence about U visas or about what the victim understood or believed through any other witness. I also disagree with the majority's conclusion that a jury can be relied on to understand the potential impact of a U visa application on a prosecution witness's testimony in the same way that it would understand the potential impact of the witness's spousal relationship with the defendant, a witness's own pending criminal charges, or a witness's employer's hostility toward the defendant. *See* 255 Or App at 817. In my view, it is beyond reasonable dispute that the average juror lacks knowledge about U visas.