Argued and submitted November 10, 2014, reversed and remanded on Counts 1, 3, and 5; otherwise affirmed April 1, 2015

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## FRANCISCO E. DEL REAL-GALVEZ,
aka Francisco E. Delreal-Galvez,
*Defendant-Appellant.*

Washington County Circuit Court
C112306CR; A153489

346 P3d 1289

Erica Herb, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Matthew J. Lysne, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

## TOOKEY, J.

Defendant, who was convicted of two counts of sexual abuse in the first degree (Counts 1 and 3), ORS 163.427,[1] and one count of coercion (Count 5), ORS 163.275,[2] appeals the resulting judgment of conviction, raising four assignments of error. We reject without discussion defendant's first assignment of error related to a CARES Northwest recorded interview with defendant's niece, X, and whether that recording constitutes "uncharged misconduct evidence" under OEC 404(3). We write only to address defendant's second assignment of error, in which he argues that the trial court improperly excluded certain impeachment evidence as not relevant—that is, evidence that X's mother, who was not a United States citizen, had applied for a U visa to remain in the United States and based her application on X's allegations that defendant had sexually abused and coerced X, and evidence that X knew about her mother's immigration status and knew that alleging sexual abuse could help her mother obtain a U visa. *See* 8 CFR § 214.14 (describing U visas). We review for legal error, conclude that the trial court erred in excluding that evidence, and further conclude that that error was not harmless. *See State v. Valle*, 255 Or App 805, 809, 298 P3d 1237 (2013) ("Whether evidence is relevant is a question of law, which we review for errors of law."). Accordingly, we reverse and remand on Counts 1, 3, and 5, and otherwise affirm.[3]

---

[1] ORS 163.427 provides, in part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less than 14 years of age[.]"

[2] ORS 163.275 provides, in part:

"(1) A person commits the crime of coercion when the person compels or induces another person to engage in conduct from which the other person has a legal right to abstain, or to abstain from engaging in conduct in which the other person has a legal right to engage, by means of instilling in the other person a fear that, if the other person refrains from the conduct compelled or induced or engages in conduct contrary to the compulsion or inducement, the actor or another will:

"(a) Unlawfully cause physical injury to some person[.]"

[3] Defendant was found not guilty on two additional counts of first-degree sexual abuse (Counts 2 and 4), and those counts are not at issue on appeal.

When X was 15 years old, she alleged that defendant had sexually abused her when she was younger and had threatened to kill her parents if she told. Based on X's allegations, defendant was subsequently charged with four counts of first-degree sexual abuse and one count of coercion.

As defendant's case proceeded to trial, X's mother applied for a U visa to remain in the United States and based her application on X's allegations that defendant had sexually abused and coerced X. In support of X's mother's U visa application, Catholic Charities Immigration Legal Services wrote a letter to the Washington County District Attorney's Office. That letter stated that X's mother "may be eligible for immigration benefits through the U visa" as an "indirect victim" of sexual abuse, based on X's status as a victim of sexual abuse and X's mother's cooperation with law enforcement officials on X's behalf. The prosecutor in this case also signed a certification form in support of X's mother's U visa application. That certification form lists the name of X's mother under "Part 1. Victim Information." It also states that X's mother had "been helpful" in the case, noting that "[s]he reported the crime to the police and DHS, she ha[d] spoken with and answered investigating officer's questions, taken her daughter to CARES Northwest for evaluation, provided her daughter's medical records, and ha[d] been subpoenaed for and testified at grand jury." It further states that X's mother's "continued assistance and availability will be helpful for the case."

Before trial, the state moved to exclude evidence that X's mother had applied for a U visa, arguing that that evidence was not relevant. *See* OEC 401 (defining "relevant evidence"). At a pretrial hearing on the state's motion, defendant argued that the proffered evidence was relevant

---

Defendant raises two additional assignments of error challenging the trial court's exclusion of other evidence—that X's mother physically abused X (third assignment of error) and that X's mother forced X into a relationship with the son of one of X's mother's friends (fourth assignment of error). Because we agree that the trial court erred as defendant alleges in his second assignment of error and reverse and remand for a new trial, and because the record may develop differently on remand, we decline to address defendant's third and fourth assignments of error. *See Valle*, 255 Or App at 806 n 1 (declining to reach the defendant's additional assignments of error on the ground that the record may develop differently on remand).

to show X's motives for disclosing the abuse and for testifying at trial. Defense counsel argued that he was entitled to "ask [X] if she knew her mom's immigration status, and if she knew about the U visa application, and if she wanted to help her mother." Defense counsel further stated:

> "I do believe that [X] knows about the U visa application. I do believe that she knows that that U visa application will allow her mother to stay in the country, and I do believe that she knows that the testimony today will benefit that application. And I think that I'm allowed to ask leading questions to gain those answers."

The trial court deferred making a ruling at that time, but stated that defendant would be allowed to raise the issue at trial, outside the presence of the jury.

At trial, during the cross-examination of X, defendant asked X if she was aware that her "mom was undocumented[,]" and the prosecutor objected. Outside the presence of the jury, defendant conducted an offer of proof, eliciting X's testimony that she knew that both of her parents were "undocumented." The trial court ruled that that evidence was not relevant and sustained the prosecutor's objection.

After the state rested its case, defense counsel called a witness, Arellano, to make another offer of proof regarding the U visa evidence. Arellano had worked with X's mother, cleaning houses. Arellano testified that a few years earlier, she was riding in a truck with other people, including X's mother and X, and listening to a radio program called "Piolin Por La Mañana." According to Arellano, a woman on that program began "talking about her case. She said that her husband had touched her daughter and that she had gotten him put in jail. And thanks to that—well, probably not thanks to that, but with that, she obtained her visa and her house[.]"

Arellano further testified that, later that day, as she and others were cleaning a particular house, she heard X's mother tell X, "'Little girl, we're going to say that your father touched you, so that way I can have my visa and we'll put the house in your name and I will give you a truck as a gift.'" According to Arellano, X's mother also told X that nothing would happen to her because she was born in the

United States. That conversation occurred in October or November 2009.

The state argued that that testimony was not relevant because the purported conversation occurred well before X's disclosure of abuse in 2011 and involved a plan to accuse X's *father* of sexual abuse, not *defendant*, who was her uncle. Defendant responded that that testimony was relevant because it established that X knew about her mother's immigration status and knew that alleging sexual abuse could help her mother obtain a U visa.

The court then ruled that that testimony was not relevant and excluded it, stating, "I'm not going to allow that testimony. * * * [D]o you have anything else * * * in regard to that issue then, [defense counsel]?" Defendant then offered into evidence the letter from Catholic Charities Immigration Legal Services, as well as the U visa certification form. The trial court also excluded that evidence, and defendant, who was convicted as noted above, now appeals.

On appeal, defendant contends that the trial court erred when it excluded evidence that X's mother had applied for a U visa to remain in the United States and based her application on X's allegations that defendant had sexually abused and coerced X, and evidence that X knew about her mother's immigration status and knew that alleging sexual abuse could help her mother obtain a U visa. Defendant argues that that evidence was relevant and that its improper exclusion was not harmless.

The state responds that the trial court correctly excluded that evidence as not relevant. According to the state, "whether X knew that an allegation of sexual abuse would be useful for obtaining a visa is not relevant unless X knew or believed that [X's mother] would pursue a U visa application once X disclosed the abuse." Thus, the state argues that defendant's proffered evidence was inadmissible because defendant failed to show that X knew or believed that her mother would submit a U visa application if X accused defendant of sexual abuse.

We addressed a similar issue of relevance in *Valle*. In *Valle*, the defendant was charged with two counts of

first-degree sodomy and four counts of second-degree sexual abuse, based on allegations made by his stepdaughter, M. 255 Or App at 806. After making the allegations, M, who was not a United States citizen, applied for a U visa on the ground that she was a victim of abuse. *Id.* At trial, the defendant sought to question M about the fact that she had applied for a U visa, but the trial court excluded that evidence. *Id.* at 809. As we noted, "it appear[ed] that the trial court excluded the evidence on the ground that defendant had failed to present sufficient information about the eligibility requirements of the U visa and, therefore, had failed to establish that evidence of M's application for the visa was relevant." *Id.*

When reviewing the applicable law in *Valle*, we noted that, because "the jury is entitled to hear all the facts relating to the possible bias and self-interest of the witness[,]" evidence of a witness's bias or interest must be received unless there is a reason to exclude it. *Id.* (internal quotation marks omitted). We also noted that a cross-examiner is given wide latitude to ask and receive answers to questions that are sufficient to demonstrate to the jury the nature of a witness's bias or interest, and that this is

"particularly true for a defendant in a criminal case who has the right, under both the state and federal constitutions, to confront witnesses, a right that includes the right to question a witness about circumstances from which a jury could reasonably infer that the witness has a motive to testify in a certain manner."

*Id.* at 810. We then explained:

"To lay a sufficient foundation for the admission of impeachment evidence, all that a party needs to do is show that the evidence is relevant. Like any other type of evidence, impeachment evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. The threshold for establishing that evidence is relevant is very low. The inference for which the proponent is offering the evidence need not be a necessary, or even the most probable, inference. Accordingly, it is error for the trial judge

to exclude evidence that establishes sufficient facts from which bias or interest of a witness may be inferred."

*Id.* at 810-11 (internal quotation marks, brackets, and emphasis omitted).

After reviewing cases illustrating "the rule that a party is entitled to present evidence from which a jury can draw inferences relating to a witness's potential bias or self-interest[,]" *id.* at 811-14, we applied that rule to the facts in *Valle* as follows:

"In this case, defendant laid a sufficient foundation for the admission of evidence that M had applied for a U visa on the ground that she had been abused. As discussed above, all defendant had to do to lay a sufficient foundation was show that the evidence was relevant, and, to do that, all he had to show was that the evidence had a tendency, however slight, to demonstrate that M had a personal interest in testifying against him. He did that. He presented information, in the form of M's own testimony, that M had applied for a U visa on the ground that she was a victim of abuse. From that testimony alone, a jury could infer that M had a personal interest in testifying that she had been abused. Simply put, M had applied for an opportunity to stay in the country on the ground that she had been abused; based on that fact, a jury could reasonably infer that she had a personal interest in testifying in a manner consistent with her application for that opportunity."

*Id.* at 814 (footnote omitted). Accordingly, we then concluded that the defendant's proffered impeachment evidence was relevant, the trial court erred in excluding it, and the trial court's error was not harmless. *Id.* at 814-15.

Based on *Valle*, and contrary to the state's argument in this case, defendant was not required to show that X knew or believed that her mother would submit a U visa application if X accused defendant of sexual abuse. Rather, "all defendant had to do to lay a sufficient foundation was show that the evidence was relevant, and, to do that, all he had to show was that the evidence had a tendency, however slight, to demonstrate that [X] had a personal interest in testifying against him." *Id.* at 814.

As in *Valle*, defendant did that in this case. Defendant submitted evidence that X's mother had applied for an

opportunity to stay in the United States on the ground that her daughter had been sexually abused and coerced. In addition, defendant submitted evidence showing not only that X knew about her mother's immigration status, but also that X knew that alleging sexual abuse could help her mother obtain a U visa. Based on those facts, a jury could reasonably infer that X had a personal interest in testifying in a manner that would help her mother obtain a U visa. Thus, defendant's impeachment evidence was relevant and should not have been excluded.

The state nevertheless argues that *Valle* is distinguishable. Specifically, the state argues that "*Valle* is instructive to the extent that it provides an outline for understanding the admissibility of U visa evidence when the victim personally applies for a U visa after disclosing sexual abuse" but not when the application is made by "*someone else.*" The state's argument is unavailing because it artificially narrows the concept of bias. As we have explained, "[b]ias may arise in a variety of ways" and "may be evidenced by personal, family, romantic, sexual, or business relationships[.]" *State v. Prange*, 247 Or App 254, 260, 268 P3d 749 (2011) (internal quotation marks omitted). Thus, "[a] party may impeach a witness for bias through evidence of the witness's relationship with another where the bias resulting from the relationship is a matter of reasonable inference rather than mere speculation." *Id.* at 261. Because X's mother had applied for an opportunity to stay in the United States on the ground that her daughter had been sexually abused and coerced, a jury could reasonably infer that X, out of a desire to help her mother obtain a U visa, had a personal interest in testifying against defendant. Thus, we conclude that the trial court erred in excluding defendant's proffered impeachment evidence.

The trial court's error requires reversal if it was not harmless. *See Valle*, 255 Or App at 815 (citing OEC 103). The state does not argue that, even if the trial court erred, that error was harmless, and our review of the record does not demonstrate that the error was harmless. When conducting a harmlessness analysis in *Valle*, we stated that

"the trial court's exclusion of evidence from which a jury could have inferred that M had a personal interest in

testifying in a certain manner was harmful because the jury was not fully informed of matters relevant to an assessment of M's credibility, which was essential to the state's case. In particular, the jury did not have information that was relevant to whether M had a motive to fabricate her allegations against defendant. Throughout the case, the prosecutor emphasized that M did not have a motive to fabricate. The trial court's exclusion of defendant's proffered impeachment evidence deprived defendant of an opportunity to meet that argument and deprived the jury of an opportunity to consider all of the information relevant to M's credibility."

*Id.*

The same issues are present in this case. The jury was not fully informed about X's potential motive to fabricate allegations against defendant and X's potential interest in testifying in a certain manner. Further, X's credibility was central to the state's case, and the prosecutor argued that X had "no motive to fabricate a disclosure against [defendant.]" Thus, under the analysis set forth in *Valle*, we conclude that the error in this case was not harmless.

Reversed and remanded on Counts 1, 3, and 5; otherwise affirmed.